# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LATOYA BRANNON for T.M.B., a minor child,** | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) **Case No.: 2:09-1670-VEH** ) |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | ) ) ) ) ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION[1]

This action was originally filed by LaToya Brannon ("Ms. Brannon") on behalf of her minor son, T.M.B.,[2] pursuant to Title XVI of the Social Security Act. T.M.B. seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), which denied his application for

---

[1] In deciding the merits of this appeal, the court adopts, in part, the format that it used in two other childhood disability cases, *Adams v. Barnhart*, No. 2:06-CV-2031-VEH, (Doc. 11) (N.D. Ala. July 13, 2007) and *R.S.L. v. Astrue*, No. 2:09-CV-701-VEH (Doc. 11) (N.D. Ala. Mar. 26, 2010). The court also persuasively relies upon the framework, analysis, and disposition in the adult disability decision of *Shelton v. Astrue*, No. 5:09-CV-1253-VEH, (Docs. 8, 9) (N.D. Ala. Apr. 26, 2010).

[2] For purposes of this opinion, the plaintiff will be referred to as "T.M.B." rather than his mother, Ms. Brannon, because the legal standards apply to him and his impairments. *See Stanton v. Astrue*, 482 F. Supp. 2d 1318, 1320 (N.D. Ala. 2007).

childhood Supplemental Security Income ("SSI") benefits.[3]  The case is ripe for review pursuant to 42 U.S.C. § 405(g), of the Social Security Act.[4]  For the reasons set out below the court concludes that the Commissioner's decision is due to be reversed and remanded.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the administrative law judge's ("ALJ") opinion is supported by

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB").  However, separate, parallel statutes and regulations exist for SSI and DIB claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[4] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d at 1239.

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, an individual under age 18 must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5]  The law defines children's "disability" as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period or not less than 12 months."  20 C.F.R. § 416.906; 42 U.S.C. § 1382c(a)(3)(C)(i).

In determining whether a child (*i.e.*, an individual under age 18) is disabled, the Regulations provide a three-step process.   20 C.F.R. § 416.924(a).   The Commissioner must determine in sequence:

> First, the ALJ must determine whether the child is engaged in substantial gainful activity. *Wilson*, 179 F.3d at 1277 n.1. If yes, the child is not disabled, but if no, the ALJ determines whether the claimant has a severe impairment. *Id.*  If not, the child is not disabled. *Id.* If yes,

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

> the ALJ then considers whether the child has an impairment that meets, medically equals, or functionally equals the Listings of Impairments. *Id.* If the child satisfies a Listing, the child is conclusively disabled.

20 C.F.R. § 416.924(a); *see also Henry v. Barnhart,* 156 Fed. Appx. 171, 173 (11th Cir. 2005) (citing 20 C.F.R. § 416.924(a); *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999)).

A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.908. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms. *Id*.

Functional equivalence is found if the child's impairment - or combination of impairments - "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C.F.R. § 416.926a (emphasis added). "A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" *Henry*, 156 Fed. Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(2)(i)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of

ability to function.'" *Henry*, 156 Fed. Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(3)(i)).

In order to determine whether a minor claimant's status functionally equals the criteria for an impairment that is listed in the Regulations, the ALJ must consider "activities in terms of six domains." 20 C.F.R. § 416.926a(b)(1). These domains are:

    (i)     Acquiring and using information;

    (ii)    Attending and completing tasks;

    (iii)   Interacting and relating with others;

    (iv)   Moving about and manipulating objects;

    (v)    Caring for yourself; and,

    (vi)   Health and physical well-being.

20 C.F.R. § 416.926(a)(b)(1)(i)-(vi). If the impairment(s) does not satisfy the duration requirements, or does not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled will be reached and the claim will be denied. *See* 20 C.F.R. § 416.924(d)(2).

### **FACTUAL AND PROCEDURAL HISTORY**

T.M.B. was seven years old when his mother filed his disability application and nine years old at the time the ALJ issued her decision. (Tr. 28, 43). During his administrative hearing, T.M.B. testified that he was in the third grade. (Tr. 28).

T.M.B.'s mother filed an application for childhood SSI on December 26, 2006. (Tr. 43). Ms. Brannon claims that T.M.B. became disabled on December 12, 2006, due to attention deficit hyperactivity disorder ("ADHD"), pica disorder,[6] narcolepsy, asthma, and "wet[ting] his clothes" or enuresis (Tr. 77, 15, 96, 47). The claim was initially denied by the Commissioner on February 22, 2007. (Tr. 44-47).

T.M.B. filed a timely request for a hearing before the ALJ on March 6, 2007. (Tr. 50). After conducting the hearing held on November 10, 2008 (Tr. 23), the ALJ concluded on April 7, 2009, that T.M.B. was not disabled and denied his application for benefits. (Tr.12-22). The Appeals Council denied T.M.B.'s request for review of the ALJ's decision on July 15, 2009. (Tr. 1-3).

T.M.B filed a complaint on August 20, 2009, which asks this court to review the ALJ's decision. (Doc. 1). The court has carefully considered the record and reverses the decision of the ALJ.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

Under step one of the three-part test for disability in children, the ALJ found that T.M.B. "ha[d] not engaged in any substantial gainful activity at any time relevant to th[e] decision[.]" (Tr. 15 ¶ 2 (citations omitted)). Accordingly, the ALJ proceeded

---

[6] Merriam-Webster online defines "pica" as "an abnormal desire to eat substances (as chalk or ashes) not normally eaten[.]" *See* http://www.merriam-webster.com/dictionary/pica (accessed on July 14, 2010).

6

to step two of the analysis.

Under step two, the ALJ found that T.M.B. had the following list of severe impairments: ADHD, pica disorder, narcolepsy, and asthma. (Tr. 15 ¶ 3 (citations omitted)). Regarding these conditions collectively, the ALJ expressly concluded that "the combination of the claimant's impairments produced more than minimal functional limitations that have lasted at least twelve months." (Tr. 15 ¶ 3). T.M.B. does not challenge this stage of the ALJ's determination on appeal. (Doc. 10 at 5).

The ALJ then evaluated T.M.B. pursuant to step three. Under this third section, the ALJ must analyze (1) whether T.M.B.'s impairments meet, medically equal, or functionally equal any of the listed impairments and, if so, (2) whether the impairments meet the duration requirement. 20 C.F.R. § 416.924(c).

Here, the ALJ first determined that T.M.B. "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] one of the listed impairments[.]" (Tr. 15 ¶ 4 (citations omitted)). Second, the ALJ also found that T.M.B. "d[id] not have an impairment or combination of impairments that functionally equal[ed] the listings[.]" (Tr. 15 ¶ 5 (citations omitted)). Based on these findings relating to the third step, the ALJ concluded that T.M.B. had not been a disabled child since December 26, 2006. (Tr. 21).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).

On appeal, T.M.B. generally attacks the ALJ's decision as unsupported by substantial evidence and "contain[ing] a material error of law." (Doc. 10 at 2). More specifically, T.M.B. "dispute[s] the ALJ's evaluation and conclusions reached under the application of the functional equivalence provisions of the childhood disability law" and maintains that the ALJ misapplied the treating physician rule. (*Id.* at 10, 12). The court turns to an evaluation of the ALJ's application of the treating physician rule first.

**I.      The ALJ committed error in his rejection of Dr. Elrefai's opinions about T.M.B.'s child development and functioning.**

The treating physician rule is a familiar standard:

>      An administrative law judge must accord "substantial" or "considerable" weight to the opinion of a claimant's treating physician unless "good cause" is shown to the contrary. *See, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). As the former Fifth Circuit explained in *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981), "[i]t is not only legally relevant but unquestionably logical that the opinions, diagnosis, and medical evidence of a treating physician whose familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time, should be given considerable weight."

*Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) (footnote omitted). While the ALJ attempted to show good cause for rejecting the domain-related opinions of T.M.B.'s treating physician, Dr. Alaa Elrefai, the court concludes that the grounds relied upon by the ALJ are inadequate.

Dr. Elrefai has been T.M.B's treating pediatric psychiatrist since December 2006. (Tr. 151-55). Dr. Elrefai diagnosed T.M.B. as suffering with ADHD, narcolepsy, pica, and enuresis beginning in 2006, and continuing into 2007. (Tr. 153, 151).

Additionally, Dr. Elrefai completed a "Child Development and Functioning Rating" form on T.M.B. on April 19, 2007, and again on November 3, 2008. (Tr. 164-65, 179-80). The Commissioner concedes that in his 2007 report, Dr. Elrefai

found that T.M.B. "was markedly limited in the domains of acquiring and using information, and interacting and relating to others, and extremely limited in the domain of attending and completing tasks." (Doc. 11 at 7 (citation omitted)). Similarly, the Commissioner acknowledges that in his 2008 report, Dr. Elrefai reported that T.M.B. "was markedly limited in the domains of health and physical well-being; acquiring and using information; attending and completing tasks; and interacting and relating to others." (*Id.* at 8 (citations omitted)). If the ALJ had accepted either one of these reports, then T.M.B. would have been found to be disabled under step three. *See* 20 C.F.R. § 416.926a (defining functional equivalence to mean markedly limited in at least two domains or extremely limited in one domain).

In her decision, the ALJ "assign[ed] little weight to the opinions expressed by treating physician, Dr. Elrefai, on the functional questionnaires he completed in April 2007 and November 2008[.]" (Tr. 17). As the ALJ further explained:

> These opinions were not supported by his own progress notes or by the balance of the medical information in the file. Indeed, Dr. Elrefai's medical records reflect that the claimant's symptoms were much improved on medications, however, the claimant had a history of non-compliance with treatment. School records reflect that the claimant's grades are good to excellent, with grades consistently from the low 80's to high 90's (all "A's" and "B's"). In addition, he has had very few periods of absence. The claimant was tested for the "gifted" program and though his scores did not qualify him for the program, they did

>indicate he had "potential." Testing by the consulting psychologist found that the claimant had a full scale IQ of 91 and a high working memory index for someone with ADHD. He found that the claimant's GAF was 55 indicating mild impairment of function (Exhibits 6E and 6F).

(Tr. 17).

Therefore, in an effort to discredit Dr. Elrefai's domain assessments of T.M.B., the ALJ reasoned that the progress notes completed by Dr. Elrefai showing that T.M.B. was "doing a whole lot better" on medication (Tr. 16, 166) are inconsistent with his functional conclusions. The court disagrees. Merely demonstrating signs of improvement with regard to bed wetting, sleeping, and school due to medication does not simultaneously and necessarily mean that certain domains of T.M.B.'s functioning were still not markedly limited. Put differently, a patient can improve within a particular range of functionality without automatically shifting into a higher degree of functioning (*i.e.*, moving from the markedly limited range into the less than markedly limited area). Moreover, while Dr. Elrefai's 2008 assessment did reflect a range improvement for T.M.B. in the domain of attending and completing tasks (*i.e.*, moving down from extremely to markedly), the presence of multiple domains in which he was still functioning with marked limitations illustrates further that simply "doing better" in one or more domains does dictate a finding of no disability under the functional equivalence disjunctive standard.

Likewise, the court is not persuaded that T.M.B.'s school records, without more, provide good cause for rejecting the domain evaluations completed by Dr. Elrefai on two separate occasions. Particularly troubling to the court is the lack of any competing functional assessment by a consulting psychiatrist or other physician who actually evaluated T.M.B. in person and found his domain functionality to be inconsistent with the childhood disability standard.

Instead, the record contains only a paper review performed by Dr. Frank Nuckols, who concluded that T.M.B. had no marked functional restrictions or limitations. (Tr. 157-61). As the Eleventh Circuit has unequivocally explained the value of a non-examining physician's opinion, it "is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *See Broughton v. Heckler*, 776 F.2d 960, 962 (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1093-94 (11th Cir. 1985)).

Similarly, while Samuel Saxon, a licensed clinical psychologist did perform a consultative examination on T.M.B., that one-time evaluation conducted on December 16, 2008, included no corresponding functional domain assessment of him. (Tr. 191-94). Additionally, portions of Dr. Saxon's report actually lend support to Dr. Elrefai's opinions, rather than discredit them. (*See, e.g.*, Tr. 191 ("However, there are frequent references to his inattentiveness, his talkativeness, his falling asleep in

12

class, etc. that <u>certainly are consistent with his diagnosis by Dr. Elrefai</u>.") (emphasis added); Tr. 192 ("These Scale Scores are certainly quite variable and with the Symbol, Search, Picture Completion and Coding being so much lower than the other subtests, <u>it should be indicated that it is certainly consistent with Attention Deficit Disorder</u>." (emphasis added)). Under such circumstances, the Commissioner has not shown good cause for rejecting Dr. Elrefai's treating physician domain determinations pertaining to T.M.B. over the non-examining report made by Dr. Nuckols and the non-domain findings made by Dr. Shelton, and the case is due to be remanded on this basis.

**II. In the absence of a supporting functional domain assessment of T.M.B. by a physician, the record has not been adequately developed, and the ALJ's determination that T.M.B. was not disabled is not supported by substantial evidence.**

Alternatively, the case is due to be remanded because the record has not been adequately developed, and the ALJ's disability determination is not supported by substantial evidence. In support of her functional conclusion drawn on T.M.B., the ALJ expressly relied upon the consultative examination performed on T.M.B. by Dr. Saxon on December 16, 2008. The court has studied the records relating to Dr. Saxon's examination of T.M.B. (Tr. 191-94). As pointed out above, nowhere within these records does Dr. Saxon express his opinion about the impact of T.M.B.'s

impairments in domain terms. Instead, Dr. Saxon's consultative findings are rawly reported without drawing any domain conclusions or opining about the levels of T.M.B's limitations as either extreme, marked, less than marked, or no evidence of limitation.

For example, Dr. Saxon gives no indication about the limitations upon T.M.B's ability to acquire and use information and to attend and complete tasks, (two of the areas in which Dr. Elrefai found to be markedly lacking in 2008), much less expresses an opinion as to whether he believes that T.M.B. was disabled. *Cf. Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).[7] Therefore, the records from Dr. Saxon fail to provide substantial evidence that T.M.B. was not disabled.

Moreover, the court has been unable to locate (and Defendant has not pointed to (*see generally* Doc. 11)) a functional assessment <u>by an examining or treating</u>

---

[7] While the issue in *Rohrberg* (and similar cases) is the lack of a supporting residual functional assessment performed by an examining or treating doctor on an adult claimant, such reasoning persuasively and equally applies to the absence of a supporting functional domain evaluation as to a child claimant.

physician which corroborates the ALJ's decision. *Cf. Rohrberg*, 26 F. Supp. 2d at 311 ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record."); *id.* ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted); *see also Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted).

A lay person, such as an ALJ is not able to discern T.M.B.'s functional abilities within the six delineated domains based upon the unfiltered information contained in his medical records. Moreover, the lack of a medically-determined domain assessment is particularly critical here when the ALJ rejected the two domain opinions contained in the record that were favorable to T.M.B. As the undersigned has previously recognized in another disability opinion that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007).

Therefore, in the absence of a functional assessment conducted on T.M.B. by an examining or treating physician that substantiates his domain abilities consistent with the ALJ's decision of no childhood disability, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Relatedly, the ALJ's determination that T.M.B. was not disabled is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.[8]

---

[8] Perhaps recognizing the weakness of its disability decision adverse to T.M.B., the Commissioner maintains that the so-called "credit as true" doctrine announced in *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) ("Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true."), is not binding law on this court due to an "intra-circuit split of authority on [the] issue, [making] the earliest panel decision [] controlling" (Doc. 11 at 13 (citation omitted)) and regardless, if it

16

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 20th day of July, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

is, the rule should not apply in this instance. (Doc. 11 at 12-14). Because the ALJ expressly assigned little weight to Dr. Elrefai's domain assessments and made some effort to discredit them, the court agrees with the Commissioner that a remand for further proceedings is the appropriate result under the circumstances of this case. *Compare Broughton*, 776 F.2d at 962 ("While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary."); *id.* (remanding for reconsideration by ALJ) *with MacGregor*, 786 F.2d 1053 ("The Secretary made no finding as to the weight of this testimony nor did he discredit it.") (footnote omitted).